Orpha Janet EVJEN, Respondent,

v.

Martin Ingvold EVJEN, Appellant.

No. 24383.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 1966.

Richard L. White, Kansas City, for appellant.

Henry H. Fox, Jr., Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff, Orpha Janet Evjen, sued defendant, Martin Ingvold Evjen, for divorce. Defendant answered plaintiff's petition and filed cross-petition for divorce. At the conclusion of a lengthy and warmly contested trial on the various issues presented, the court found the issues for plaintiff and against defendant on plaintiff's petition for divorce, and for plaintiff and against defendant on defendant's cross-petition. It was adjudged and decreed that the bonds of matrimony contracted between the parties be dissolved and that plaintiff be forever freed from the obligations thereof; that the costs be paid by defendant; that defendant pay to plaintiff the sum of $250.00 per month as alimony until further order of the court; that defendant pay to plaintiff, as her attorney's fees, the sum of $600.00; and that defendant's cross-petition be dismissed. Defendant appeals.

The transcript consists of three hundred twenty-five pages of testimony. The testimony was highly conflicting on the chief issues presented. We will review the case upon both the law and the evidence as in suits of an equitable nature. The judgment will not be set aside unless it is clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses. Missouri Supreme Court Rule 73.01(d), V.A.M.R. Where the proper disposition of this kind of case depends largely upon the credibility of the witnesses, as it does here, the rule of deference above mentioned is applicable. Thomas v. Thomas, 288 S.W.2d (Mo.App.) 689, 696.

Plaintiff's claim for relief is based upon indignities. Defendant contends that the court erred in rendering the judgment herein because plaintiff's evidence failed to establish that defendant's conduct was such as to constitute indignities sufficient to support a decree of divorce; that defendant was not legally accountable for his acts and was incapable of avoiding their commission due to his mental illness; that defendant was entitled to a decree of divorce on his evidence of abandonment and general indignities. He also contends that the court erred in failing to make and enter findings of facts. The record is silent as to the making of any request of that nature, and the matter is not mentioned in the motion for new trial. We will not consider the point.

Plaintiff offered the testimony of two witnesses tending to prove that her general reputation is good. She testified in her own behalf to the effect that she and defendant were married in Minnesota in 1935, and lived together there, as husband and wife, until 1957, when defendant was required to move to Kansas City by Montgomery Ward, his employer; that there were three children of the marriage, all now being mature; that they purchased a home in Kansas City for $16,000.00 and spent $2500.00 repairing and remodelling; that they paid these items in cash, but that, in order to defray college expenses for the children, they later borrowed $14,000.00 on the home; that they have made payments thereon since; that there now remains an unpaid balance; that the title is in their joint names; that it is now occupied by defendant; that plaintiff kept the home throughout the years of their marriage and did not work outside the home until about April of 1963; that defendant had, for years, urged her to work at something in order to add to the family income and that, with his approval, she became a real estate saleswoman in March, 1963.

She stated that during the years of the marriage defendant travelled a great deal; that he would give her the pay check which she deposited and that the proceeds were used for the entire family; that, prior to coming here, they had some marital trou-

bles; that he often used abusive language toward her; that they were not happy; that such conduct grew worse after 1957; that, while she was working on remodelling the house they bought in Kansas City, on one occasion he called her a bitch, a liar, a son of a bitch; that he used profane language to her; that such language and conduct has continued over a long period of years; that it has been worse since 1957; that, on an occasion in Springfield, Missouri, when they were there for their daughter to participate in a beauty contest, he created a scene at the motel, refused to pay the motel bill and otherwise was rude in the lobby in the presence of other guests.

She stated that, for many years, he had urged her to do sales work outside of the home in order to add to the family income; that, in December, 1962, she began training as a real estate saleswoman with his approval; that in March or April, 1963, she was employed on commission, by a Mr. Wandell, who operated a real estate agency; that Mrs. Wandell contacted her; that Mr. and Mrs. Wandell were living separately but were operating the office together; that defendant approved and referred a number of clients to her from among Wards employees; that he eventually became critical of her being gone from home so much; that he began charging her with being intimate with Wandell; that he harassed her in her work; that he would come to the office and create unpleasant scenes; that he would visit her "open houses" thereby interfering with her sales work; that she would try to explain that she was not guilty of any misconduct but that he continued such conduct; that they had not slept together or had any marital happiness for a long time prior to her leaving the home in February, 1964; that she bought a home, made a down payment, and moved into it; that while she was remodelling it he came to the house, abused her and struggled with her in the presence of Mr. Wandell and other workmen; that he had called her a god damn bitch and a whore. She filed this suit on March 2, 1964.

Mr. Wandell testified generally to the same facts as did plaintiff, as to defendant's course of conduct after plaintiff's employment with his agency by Mrs. Wandell, from whom he was then separated although they worked together in the business. He stated that Mrs. Wandell tried to explain to defendant the nature of plaintiff's work, which required her to work at night, but that he continued to harass Mr. Wandell by coming to the office and creating disturbances; that he called Wandell time after time and charged him with misconduct with plaintiff. He stated that on one occasion defendant almost ran over witness, plaintiff and two customers in witness's parking lot. He stated that, although he is now divorced, he still loves his former wife and has never had any interest in plaintiff except in a business way; that he finally had to terminate her employment, in April or May 1964, because of defendant's constant harassment of the business, by telephone, personally at the office, and at houses which were being shown for sale. It would serve no useful purpose to recite specific happenings and incidents which, if his testimony and that of plaintiff is to be believed, indicates a continuous course of conduct on defendant's part such as would render plaintiff's condition in life intolerable.

Such testimony was to the effect that he repeatedly called her a liar, a bitch, a son of a bitch, a whore, charged her with sleeping with Wandell and with running with other men; and that such conduct continued over a course of more than a year.

Defendant testified to the effect that the parties had no real marital problems until plaintiff started working for Wandell; that she began staying out late at night and until early hours in the morning; that Mr. Wandell would call him at all hours of the night and tell him that he loved plaintiff; that he had slept with her; that he would call him a son of a bitch; that, since separation, he has sought reconciliation; that he was at Wandell's office a number of times; that he never called Wandell bad names; that he did drive through the parking lot one night

without stopping but did not see anyone there except some people in a car; that he went to plaintiff's home, after she moved, and there was a scene and scuffling, but he denied that anyone was there except Wandell and plaintiff; that he went there to seek a reconciliation while the house was under repair; that he visited plaintiff's open houses only at her invitation; that he never called Wandell by telephone but that Wandell called him many times and stated that he loved plaintiff and had slept with her; that she had dates with other men; that she had broken up defendant's home; that he would testify against her in this case. He stated that he had been in a hospital once for a nervous condition and once for psychiatric treatment; that he spent but one day in the hospital for psychiatric treatment; that he had some shock treatments; that he never called plaintiff a bitch or liar or a whore; that they argued over whether to buy another home; that his gross pay was $10,500.00; that he had no other income and no property of much value other than the home, which was in their joint names; that he was paying her $150.00 per month alimony under court order. He stated that a man told him, after separation, that plaintiff had a boy friend named Marvin.

There was testimony to the effect that plaintiff was partially disabled as a result of an automobile collision; that she needed $250.00 worth of dental work done; that she was suffering from a kidney infection for which she was under treatment; that she had no income except $150.00 per month from defendant; that she owned no separate property except the house where she lived, upon which she was making heavy payments.

■ From all of the evidence the court found plaintiff to be the innocent and injured party. There was evidence to support a finding that defendant's conduct was such as to render plaintiff's condition in life intolerable. If he called her a whore, a bitch, a liar, a son of a bitch, and charged her with sleeping with her employer and dating other men, she being innocent thereof, as the court found, she is entitled to be divorced because of indignities, and there is no precise interval over which such conduct must extend to develop into such indignities as to be ground for divorce. Spencer v. Spencer, 382 S.W.2d (Mo.App.) 237, 240. Each case of this kind must be determined on its own facts and great deference should be paid to the findings of the trial court. Mayor v. Mayor, 351 S.W.2d (Mo.App.) 810, 813.

■ The evidence tending to excuse defendant's conduct because of mental illness is weak. It was considered by the court and it does not justify us in interfering with the court's findings and judgment.

■ Defendant complains of the allowance of alimony in the amont of $250.00 monthly. Plaintiff testified to facts tending to establish that her cost of living will require that much or more. She is in ill health and under medical care. She needs dental care. She is untrained for employment other than as a real estate saleswoman and has had only limited experience in that field. It does not appear that she could, at this time, earn a competent income in that field. We cannot hold the alimony allowance to be excessive.

■ Complaint is also made that the allowance for attorney's fees, $600.00, is excessive. The court heard the case tried and has experience in judging of the value of attorneys' services in such cases. Defendant has a gross income of $10,500.00 per year. He has some other personal property and there is an equity in the home jointly owned by the parties. We will not hold the fee allowed to be excessive.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.